AMERICAN INSURANCE COMPANY, Appellee,

v.

OHIO BUREAU OF WORKERS' COMPENSATION et al., Appellees;

Transport Insurance Company, Appellant.

[Cite as *American Ins. Co. v. Ohio Bur. of Workers' Comp.* (1991), 62 Ohio App.3d 921.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1136.

Decided March 28, 1991.

*Droder & Miller Co., L.P.A., A. Dennis Miller* and *Bradley A. Powell,* for appellee American Insurance Company.

*Lee I. Fisher,* Attorney General, and *Dennis L. Hufstader,* for appellees Bureau of Workers' Compensation and Industrial Commission of Ohio.

*Montgomery, Rennie & Jonson, Douglas W. Rennie, Frederick M. Morgan, Jr.,* and *Janet A. Self,* for appellant.

PETREE, Judge.

Appellant, Transport Insurance Company ("Transport"), appeals from a judgment of the Franklin County Court of Common Pleas declaring that appellee, the American Insurance Company ("American"), may be subrogated to the rights of Wilson Freight Company ("Wilson Freight") against Transport on a policy of excess indemnity insurance issued to Wilson Freight by Transport.

Wilson Freight was a self-insured employer for purposes of paying Ohio workers' compensation benefits. To qualify as a self-insured employer, Wilson Freight was required to obtain a surety bond sufficient to secure its obligations to its employees. Wilson Freight obtained such a bond from American. Wilson Freight was also permitted, though not required, to obtain excess indemnity coverage to reimburse it for payments in excess of $50,000 in any one event. Wilson Freight procured such a policy of indemnity insurance from Transport. The policy provided that Transport would indemnify Wilson Freight for the "ultimate net loss in excess of" $50,000 incurred in paying workers' compensation benefits. The term "ultimate net loss" was further defined as "the sum actually paid in cash in the settlement or satisfaction of losses for which the insured is liable."

Wilson Freight filed a petition in bankruptcy and the Industrial Commission demanded that American make payment on the surety bonds it had issued to Wilson Freight. American then instituted this declaratory judgment action against Transport, the Industrial Commission of Ohio, and the Bureau of Workers' Compensation. American disputes the extent of its liability to the Industrial Commission and that issue remains pending in the proceedings below. On American's motion, the trial court entered partial summary judgment for American and against Transport, holding that American was entitled to all the benefits of the indemnification agreement between Wilson

Freight and Transport. From this judgment, Transport appeals, asserting the following assignments of error:

"1. The trial court erred as a matter of law when it concluded that American, as Wilson Freight's surety, was a third-party beneficiary of the indemnity contract between Wilson Freight and Transport.

"2. The trial court erred as a matter of law when it concluded that American was entitled to collect under the indemnity contract between Wilson Freight and Transport under principles of subrogation."

We will address the assignments of error in reverse order, as the second assignment of error raises the central issue in this case. Under the indemnity policy issued by Transport, payment of any loss by the insured is a condition precedent to Transport's duty of indemnification. *Stickel v. Excess Ins. Co. of America* (1939), 136 Ohio St. 49, 15 O.O. 570, 23 N.E.2d 839, paragraph two of the syllabus. Wilson Freight has not, in fact, paid any loss and American is not a named insured under Transport's policy. American maintains that, as Wilson Freight's surety, it is equitably subrogated to Wilson Freight's rights under the indemnity policy. Transport responds that American is subrogated not to the rights of its principal, Wilson Freight, but to the rights of its principal's obligee, the Industrial Commission. As the Industrial Commission has no right to indemnification under the policy, Transport argues that American, as the Industrial Commission's subrogee, has no right to indemnification as well. This court previously addressed this exact issue in *Travelers Indemn. Co. v. Aetna Ins. Co.* (Dec. 14, 1989), Franklin App. No. 89AP–816, unreported, 1989 WL 150830. In *Travelers*, we held that the surety of a self-insured employer became subrogated to the rights of its principal under a policy of excess indemnity insurance. For the following reasons, we now reaffirm our holding in *Travelers*.

In the seminal Ohio case addressing the subrogation of sureties, *Maryland Cas. Co. v. Gough* (1946), 146 Ohio St. 305, 32 O.O. 365, 65 N.E.2d 858, the Supreme Court held that a surety " * * * is subrogated not only to the rights of the creditor against principal, but to the rights of the creditor against persons other than the principal whose negligence or wilful conduct has made them liable to the creditor for the same default." *Id.* at paragraph four of the syllabus. From this language, Transport infers that a surety may only be subrogated to the rights of the creditor or obligee, not to the rights of its principal. We do not read *Maryland Casualty* so restrictively. The language used is inclusive, not exclusive. Since *Maryland Casualty* did not explicitly address the issue presented in this case, we begin our analysis with an examination of the general principles of subrogation.

■ Legal subrogation is an equitable doctrine derived from the civil law. *Prairie State Bank v. United States* (1896), 164 U.S. 227, 231, 17 S.Ct. 142, 144, 41 L.Ed. 412, 416. The right to be subrogated arises from the relation of the parties and does not depend on contract or statute for its application. *Smith v. Folsom* (1909), 80 Ohio St. 218, 231, 88 N.E. 546, 548; *Hill v. King* (1891), 48 Ohio St. 75, 26 N.E. 988. " * * * '[t]he doctrine is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter'." *Lake Erie & Western RR. Co. v. Falk* (1900), 62 Ohio St. 297, at 305–306, 56 N.E. 1020, at 1023. "Equitable subrogation is essentially a theory of unjust enrichment." *Ridge Tool Co. v. Silva* (1986), 33 Ohio App.3d 260, 261, 515 N.E.2d 945, 946. It shifts a loss from one merely secondarily liable on a debt to one more primarily liable on the debt who in equity should have paid it in the first instance.

■ Legal subrogation achieves this objective by substituting one person to whom a particular right does not legally belong in the place of the legal owner of that right. *Federal Union Life Ins. Co. v. Deitsch* (1934), 127 Ohio St. 505, 510, 189 N.E. 440, 442. The former stands in the shoes of the latter, so that if American is subrogated to Wilson Freight, American would be entitled to exercise those rights that would have been available to Wilson Freight had it paid its debt to the Industrial Commission.

■ A surety is traditionally subrogated to the rights of the one it pays, the obligee. *Maryland Casualty, supra; Dempsey v. Bush* (1868), 18 Ohio St. 376. Thus, in *Maryland Casualty* the court explained that when a surety discharges the principal's debt, the debt is not extinguished in equity, and the obligee continues to hold those rights for the benefit of the surety. Nevertheless, the principles of subrogation previously discussed do not necessarily limit the surety's right of subrogation to only the rights of the obligee. As a creature of equity, subrogation is not limited by arbitrary legal rules. Its applicability depends on the particular facts and circumstances of a given case. 10 Williston On Contracts (3 Ed.1967) 844, Section 1265. The tendency of the law is to expand, not restrict, the classes of cases to which subrogation will be applied. *Seward v. National Surety Co.* (1929), 120 Ohio St. 47, 51, 165 N.E. 537, 538. Ultimately, the doctrine will be invoked where necessary to prevent injustice.

Our research has revealed two classes of cases where courts have consistently held that a surety is subrogated to the rights of its principal, as well as the obligee. In construction cases where the surety completes performance for the defaulting principal under the contract, the surety will be subrogated to the principal's right to payment by the owner upon completion of the

project. *Travelers Indemnity Co. v. Peacock Construction Co.* (C.A.5, 1970), 423 F.2d 1153; *Travelers Indemnity Co. v. First Natl. State Bank of New Jersey* (N.J.1971), 328 F.Supp. 208; *Equilease Corp. v. United States Fidelity & Guaranty Co.* (1978), 262 Ark. 689, 565 S.W.2d 125; *United States Fidelity & Guaranty Co. v. First State Bank of Salina* (1972), 208 Kan. 738, 494 P.2d 1149.

Similarly, where the surety is called to answer for the principal's default, the surety is subrogated to the principal's rights against others who by their negligence, breach of contract or breach of warranty contributed to that default. *Travelers Indemnity Co. v. Evans Pipe Co.* (C.A.6, 1970), 432 F.2d 211; *United States Fidelity & Guaranty Co. v. North American Steel Corp.* (Fla.App.1976), 335 So.2d 18; *Menorah Nursing Home, Inc. v. Zukov* (1989), 153 A.D.2d 13, 548 N.Y.Supp.2d 702;[1] *Maryland Casualty Co. v. King* (Okl.1963), 381 P.2d 153.

Moreover, it has long been the law of Ohio that a surety may assert the defenses of its principal to the debt held by the obligee. *State, ex rel. Knox Co., v. Blake* (1853), 2 Ohio St. 147, syllabus.

We think the proper rule is that, when equitable, a surety is subrogated not only to the rights of the obligee, but also to the rights and remedies of the principal against third parties, where those rights arise from or are closely related to the debt the surety is called to pay under the suretyship agreement. As equity is served and unjust enrichment avoided, this rule is entirely consistent with the well-established law of subrogation. If Wilson Freight had paid its debt to the Industrial Commission, Transport's policy would have required it to indemnify Wilson Freight. We see no reason why Transport should be absolved of its contractual obligation simply because a surety steps in and discharges Wilson Freight's obligation to the Industrial Commission. Once the obligation of its principal is completely discharged, American steps into the shoes of its principal, Wilson Freight, and is entitled to exercise any rights arising from the debt paid, specifically the right to indemnification under Transport's policy of excess indemnity insurance.

The second assignment of error is not well taken.

The first assignment of error is easily disposed of, given our holding in the second assignment of error. Expressing no opinion on the applicability of third-party beneficiary law to the facts of this case, we find that the trial

---

1. The *Menorah* case is particularly instructive as the court rejected an argument identical to Transport's, that a surety is subrogated only to the rights of the obligee, not to the rights of the principal.

court did not need to, nor did it, rely on this theory to support its judgment. Accordingly, the second assignment of error is also not well taken.

The assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and BRYANT, J., concur.