JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Jose A. Villanueva. Appellant Ohio Farmers Insurance Company (Ohio Farmers) claims it was error to dismiss its subrogation action against appellees Huntington National Bank (Huntington), Ronald Sears and William Lavin for lack of subject matter jurisdiction. Ohio Farmers sought to recover money it paid to satisfy a surcharge against a guardian, from those whose negligence assisted the guardian's attorney to plunder the ward's assets. It contends its action is based upon common law and contract law for the recovery of economic damages which is within the subject matter jurisdiction of the general division of the common pleas court, not the probate division. We disagree and affirm.
This court considered the matter underlying the present action in In re Bonner (June 25, 1998), Cuyahoga App. No. 73506, unreported, upon Eric Bonner's appeal from the decision of Judge John J. Donnelly of the Probate Division. We adopt the following recitation of facts from that opinion and undisputed facts presented in the present action.
Following the deaths of Rose Marie and Eddy Bonner, Sr. in 1979, Bessie Culp and Lillie Bonner were appointed co-guardians of their grandsons, Eddie Bonner, Jr. (d.o.b. June 6, 1969) and Eric Bonner (d.o.b. August 1, 1975). They were duly bonded, and they retained attorney Yale Barkan to file various accounts and other documents. The guardians received insurance proceeds, the wards' social security payments and other property, and made various disbursements. By June of 1984, the guardianship held approximately $244,175. By 1987, Eddie Bonner was eighteen years old and received a disbursement of $150,000 from the guardianship. By 1988, Culp had died; Bonner became the sole guardian, and attorney Ronald Sears referred her to William Lavin, a probate lawyer with whom he shared office space. Bonner retained Lavin and, at Lavin's request, Sears joined in the notice of appearance for the guardianship. Bonner executed a joint power of attorney to both lawyers. The account filed in May 1989 indicates assets of $161,253 remained in the guardianship.
In December 1989, Lavin opened a checking account at Huntington by a power of attorney arrangement, made himself the sole signator and, by 1992, began writing himself checks against the guardianship funds. In 1990, Bonner had obtained a $354,000 fiduciary bond issued by Ohio Farmers. Lavin filed a final account with the probate court in November 1993, which indicated that $189,885 had been distributed to Eric Bonner. On June 17, 1996, Eric Bonner filed a motion to vacate the final account on the basis of fraud, claiming that he had received only $89,000 from the guardianship and that Sears, who had been his guardian's attorney for small matters, retained over $20,000 of that $89,000 for attorney fees.[1]
Following the hearing on the motion to vacate the final account, the referee concluded that it should be vacated. On March 11, 1997, the judge vacated the final account, and on March 18, 1997, Eric Bonner filed a motion to surcharge Bonner for the deficiency. Within the same action, Bonner, in her capacity as guardian, and Ohio Farmers filed a complaint for concealment of assets in which they alleged that Sears and/or Lavin may be in possession of funds belonging to the guardianship. Sears attempted to bring Huntington into the case as a third-party defendant but the judge dismissed his complaint on the basis that no third-party practice is allowed in a special proceeding. On September 8, 1997, the judge journalized an agreed judgment entry, in the concealment action, against Lavin and in favor of Bonner and Ohio Farmer's Insurance Company in the sum of $97,915, plus a 10% penalty in the amount of $9,715, plus interest at the rate of 10% from October 15, 1993.
On October 8, 1997, the parties filed stipulations "with respect to the consideration of the Motion to Surcharge"[2] and additionally asked the judge to consider Bonner's deposition and their briefs. In relevant part, the stipulations provided:
 4. On May 3, 1990, Lillie posted a bond with the Court in the amount of $354,000, issued by Ohio Farmers Insurance Company as surety.
 5. Lavin wrote checks from the guardianship bank account; a separate account into which the monthly social security checks were deposited was controlled by Lillie. Lavin controlled several certificates of deposit and the checking account at Huntington Bank.
 6. Around June, 1992, pursuant to the power of attorney, Lavin began to write numerous checks for his own use, without court authorization, payable to himself; and Lavin conveyed away funds belonging to the Guardianship Estate of Eric Bonner, in the amount of $97,915.00.
 7. In August, 1993, Eric received $89,000.00 at the termination of the guardianship upon turning 18. Lavin falsely told Eric that he had mailed the remaining funds in October, 1993.
 8. Lavin is being prosecuted pursuant to an Information in the United States District Court for the Northern District of Ohio, Eastern Division, under Case No. 1:97CR181. * * *
 9. Lavin has also admitted in a judgment filed with this court that he conveyed away for his personal use Bonner guardianship funds in the sum of $97,915.00. * * *
On October 17, 1997, the judge determined that Bonner had delegated almost the entire administration of the guardianship estate to Lavin and therefore failed to act prudently and exercise due care in the supervision of Eric Bonner's guardianship estate. He then surcharged her $97,915 but made no provision for interest. Thus, the judge approved the award to Bonner and Ohio Farmers of $97,915 plus a 10% penalty and interest from October 1993 on their claim against Lavin but denied Eric Bonner interest or penalty in his action against Bonner. On June 25, 1998, this court reversed and remanded the case so the judgment in the surcharge action could indicate that Eric Bonner was also authorized to receive a penalty of 10% and 10% interest from August 1993, his eighteenth birthday.
About three months before oral argument on the Bonner I
appeal, Ohio Farmers filed the present action against Huntington, Sears and Lavin in the General Division. It alleged that Huntington had actual notice of the guardianship; that it knew or should have known that Lavin breached his fiduciary obligations to the principal, Bonner, to Eric Bonner, and to the guardianship estate by making unauthorized transactions from amounts held by Huntington; that it acted wantonly and recklessly, aiding and abetting the conversion of funds from the guardianship estate; and that it acted negligently in allowing Lavin to withdraw funds without court order in violation of statute. Ohio Farmers' claims against Sears and Lavin sounded in negligence, fraud, and civil conspiracy. All defendants answered asserting cross-claims. Bonner later filed a motion to intervene as a third-party plaintiff, which was granted.[3]
In December 1998, Huntington filed a motion for summary judgment and a motion to dismiss the complaint and amended complaint based upon lack of subject matter jurisdiction. The journal entry dated March 19, 1999, stated:
 Final pretrial had. * * * The court has exhaustively reviewed all of the pleadings and motions filed in the case with particular attention to the following: Defendant Huntington Bank's 12-30-98 Motion to Dismiss;
Defendant Huntington Bank's 12-31-99 Supplemental Motion
to Dismiss; Defendant Huntington Bank's 12-22-98 Motion for Summary Judgment; Plaintiff's 1-14-99 separate responses thereto; and Defendant Ronald A. Sears' 1-28-99 Motion for Summary Judgment. The court also permitted counsel to discuss and argue their clients' positions in chambers. The court has also read and reviewed the case law cited by counsel in their briefs and arguments. After a careful consideration of all the foregoing, the court determines that it does not have subject matter jurisdiction over the claims and disputes presented in the instant case and that subject matter jurisdiction lies instead with the Probate Division of the Cuyahoga County Court of Common Pleas. More specifically, the court is of the opinion that resolution of the dispute in question will depend in large part upon an analysis and interpretation of certain guardianship forms, procedures and practices which the Probate Division * * * is in the best position to undertake. It will also require a considerationof matters and claims relating to the very guardianship relationship at issue herein which were previously filed and heard in the Probate Division * * *, some of which remain pending there still. Accordingly, the instant matter is dismissed for lack of subject matter jurisdiction pursuant to O.R.C.P. 41(B)(4), a failure otherwise than upon the merits and same is without prejudice.
Only Ohio Farmers filed an appeal. Its single assignment of error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE GENERAL DIVISION OF THE CUYAHOGA COUNTY COMMON PLEAS COURT LACKS SUBJECT MATTER JURISDICTION OVER A SUIT TO RECOVER THE PAYMENT OF SURCHARGES AGAINST THE SURETY ON A FIDUCIARY BOND FROM A FINANCIAL INSTITUTION WHO AIDED AND ABETTED THE GUARDIANSHIP ATTORNEY IN THE DEFALCATION OF A GUARDIANSHIP ACCOUNT, AND IN FINDING THAT SUCH SUIT MUST BE BROUGHT IN THE PROBATE DIVISION.
Ohio Farmers argues that the General Division has jurisdiction on its action against Huntington based upon the principles of equitable subrogation and other claims under the bond contract, in addition to common-law theories of conversion and fraud.[4]
Moreover, because the ward is emancipated, the guardianship account has been settled and the surety discharged, there are no further matters that touch the guardianship estate. It concludes, therefore, the action can no longer be considered within the jurisdiction of the Probate Division. Huntington and Sears counter that R.C. 2109.50, in conjunction with R.C. 2101.24, squarely places these subrogation claims within the subject matter jurisdiction of the Probate Division.
When determining its subject-matter jurisdiction pursuant to a Civ.R. 12(B)(1) motion to dismiss, a judge is not confined to the allegations contained in the complaint and may consider material pertinent to such inquiry without converting the motion into one for summary judgment. Southgate Development Corp. v. Columbia GasTransmission Corp. (1976), 48 Ohio St.2d 211, 358 N.E.2d 526, paragraph one of the syllabus. This court reviews that legal determination de novo, without any deference to the conclusion of the judge, McClure v. McClure (1997), 119 Ohio App.3d 76, 79,694 N.E.2d 515, and applies the same standard of review used by the federal courts when ruling upon a Fed.R.Civ.R. 12(b)(1) motion. [A] trial court `may dismiss a complaint for lack of jurisdiction over subject matter on the basis of (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.' Tibbs v. Kendrick
(1994), 93 Ohio App.3d 35, 39-40, 637 N.E.2d 397, quoting Jenkinsv. Eberhart (1991), 71 Ohio App.3d 351, 355, 594 N.E.2d 29, quotingWilliamson v. Tucker (C.A.5, 1981), 645 F.2d 404, 413.
The probate court is a court of limited jurisdiction; it can exercise just such powers as are conferred on it by statute and the constitution of the state * * *. Saxton v. Seiberling (1891),48 Ohio St. 554, 559, 29 N.E. 179; Schucker v. Metcalf (1986),22 Ohio St.3d 33, 34, 488 N.E.2d 210. Pursuant to R.C. 2101.24(A)(1)(e), the probate court has exclusive jurisdiction [t]o appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts. It also has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code. R.C. 2101.24(C); Wolfrum v. Wolfrum (1965), 2 Ohio St.2d 237,208 N.E.2d 537, paragraph one of the syllabus.
A proceeding for the discovery of concealed or embezzled assets of an estate, instituted under Section 2109.50, Revised Code, is a special proceeding of a summary and inquisitorial character and is quasi criminal in nature. In re Fife's Estate
(1956), 164 Ohio St. 449, 132 N.E.2d 185, paragraph one of the syllabus. R.C. 2109.50 provides as follows:
 Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom the complaint is made, by a person interested in such trust estate or by the creditor of a person interested in such trust estate against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint.
This court has held that a financial institution which conveys out money in its possession to an unauthorized individual without the consent of the * * * estate comes within the provisions of R.C.2109.50 et seq. In re Estate of Popp (1994), 94 Ohio App.3d 640,646, 641 N.E.2d 739, citing Fecteau v. Cleveland Trust Co. (1960),171 Ohio St. 121, 167 N.E.2d 890; accord Rinehart v. Bank One,Columbus, N.A. (1998), 125 Ohio App.3d 719, 728, 709 N.E.2d 559.
Ohio Farmers seeks to avoid the application of the rule in Estate of Popp to the present action, arguing that it does not assert a R.C. 2109.50 claim but, rather it seeks money damages arising from the common-law torts of aiding and abetting conversion, breach of fiduciary duty, and over claims for breach of contract, as well as for recovery of money damages arising from assigned claims, and subrogated payments of a fiduciary's bond. (Appellant's brief at 8-9). The actions of Huntington, it asserts, constitute breach of both implied and written contracts with the guardian. Because Ohio Farmers acquired these rights by way of assignment and subrogation, and because these rights no longer concern the guardian or the ward, its claims do not touch the guardianship and are no longer within the exclusive jurisdiction of the Probate Division.
While we agree that Ohio Farmers is subrogated to Bonner's rights as guardian, we disagree that this takes the matter out of the jurisdiction of the Probate Division. Legal subrogation arises by operation of law and applies when one person is subrogated to certain rights of another so that the person is substituted in the place of the other and succeeds to the rights of the other person.Blue Cross Blue Shield Mut. of Ohio v. Hrenko (1995), 72 Ohio St.3d 120,121, 647 N.E.2d 1358, citing State v. Jones (1980),61 Ohio St.2d 99, 100-101, 399 N.E.2d 1215, 1216-1217. Conventional subrogation is premised on the contractual obligations of the parties, either express or implied. The focus of conventional subrogation is the agreement of the parties. Hrenko, supra at 121, citing Jones, supra at 101. Once the surety discharges the obligation of its principal, the surety steps into the shoes of its principal and may exercise any rights arising from the debt paid.American Ins. Co. v. Ohio Bur. of Workers Comp. (1991), 62 Ohio App.3d 921,925, 577 N.E.2d 756.
Applying these rules, Ohio Farmers, as surety, stands in the shoes of Bonner, the guardian, and it may exercise any rights, found in common law or contract, she may have as guardian against another which arise out of the surety/principal relationship. Seeid. at 925. As such, we must look to her causes of action to determine the jurisdictional issue presented here.
Reviewing the complaint in its entirety, Ohio Farmers, while standing in the guardian's shoes, alleges that Huntington Bank conveyed away to Lavin, without authorization, funds in the amount of $97,915.00 belonging to the Guardianship Estate of Eric Bonner. As a result, the action falls squarely within the ambit of R.C.2109.50 and the exclusive jurisdiction of the Probate Division.Estate of Popp, 94 Ohio App.3d at 646; Ohio Farmers Ins. Co. v.Bank One, Dayton (Aug. 21, 1998), Montgomery App. 16981, unreported.[5] The fact that the guardianship has terminated does not foreclose that exclusive jurisdiction. We overrule the assignment of error.
It is ordered that the appellee recover from the appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] In his motion for summary judgment filed in the present action, Sears contended that his settlement with Eric Bonner and subsequent release on his claims absolved him of any liability to Ohio Farmers on its current claims.
[2] An undated copy attached to the original complaint in the present action contains only the signatures of Lillie Bonner, her attorney, and the attorney for Ohio Farmers.
[3] While Ohio Farmers purportedly filed an amended complaint naming Lillie Bonner as an intervening party plaintiff before requesting leave of court, such an amended complaint is not part of the record.
[4] Ohio Farmers does not challenge the ruling as to defendants Sears and Lavin in either its assignment of error or accompanying argument. Therefore, we limit our review accordingly. App.R. 12(A)(1)(b); Askew v. ABC Check Cashing, Inc. (Oct. 3, 1996), Cuyahoga App. 69906, unreported.
[5] We also find without merit Ohio Farmers' argument that a probate court cannot award money damages in the present action. SeeGoff v. Ameritrust Co. N.A. (May 5, 1994), Cuyahoga App. Nos. 65196 and 66016, unreported, cited with approval in State ex rel. Lewisv. Moser (1995), 72 Ohio St.3d 25, 29, 647 N.E.2d 155; Ohio Farmersv. Bank One, Dayton (Aug. 21, 1998), Montgomery App. No. 16981, unreported.