OPINION
{¶ 1} Worrell A. Reid, Administrator de bonis non, with will annexed ("d.b.n.w.w.a."), of the estate of Anna Bell Bishop appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which granted summary judgment in favor of American States Insurance Company ("American") on Reid's surcharge action against American as the surety for the original Administrator, Charles E. Jones.
 {¶ 2} The facts of this case are straight-forward and undisputed. On November 20, 1982, Anna Bell Bishop died testate in Dayton, Ohio. Bishop's will was admitted to probate on December 13, 1982, and her adult brother, Charles E. Jones, was appointed Administrator, with will annexed, of her estate. Western Casualty Surety Company issued a fiduciary bond on behalf of Jones in the amount of $18,000. American is the successor-in-interest to Western.
 {¶ 3} On April 17, 1984, Jones filed his First and Partial Fiduciary's Account. The account indicated that Jones continued to hold estate assets totaling $36,876.50, which consisted of $1,876.50 in personal property and real estate valued at $35,000. Jones received an extension of time for the filing of his Second and Final Account, due to the scheduled sale of the real estate. The sale of the property was completed in July 1985. Jones never filed another account. Jones died on December 31, 1996, more than eleven years after the sale of the property.
 {¶ 4} On October 1, 2001, the probate court found that Jones was in default of filing accounts, had failed to administer the estate in a timely manner, and had breached his fiduciary duty. The court removed Jones as administrator and appointed Reid as administrator d.b.n.w.w.a.
 {¶ 5} On June 25, 2002, Reid filed an application to surcharge the fiduciary bond. After several attempts to name the correct successor-in-interest to Western, on April 10, 2003, as a result of an agreed entry, American was substituted as the proper real party in interest. On June 16, 2003, Reid filed a motion for summary judgment on his surcharge application. American opposed the motion and filed a cross-motion for summary judgment, arguing that Reid's claims against it were barred by the statute of limitations set forth in R.C. 2305.12, the doctrine of laches, and the doctrine of impairment of subrogation rights. On July 14, 2003, the magistrate denied Reid's motion and granted American's motion. The magistrate reasoned that there was no valid claim against Jones' estate, because no claim was filed within one year of his death, in accordance with R.C. 2117.06(B). Because American could only be liable for the valid claims against its principal and since there could be no valid claim against Jones, the magistrate held that American was entitled to summary judgment. Reid objected to the magistrate's decision. On September 3, 2003, the trial court adopted the magistrate's decision, with modification, and found that Reid's claim was barred by R.C. 2305.12 and R.C. 2117.06(B).
 {¶ 6} Reid presents one assignment of error on appeal.
 {¶ 7} "1. The trial court erred in adopting the Magistrate's ecision where the magistrate's decision was based solely on the fact that no claim regarding the deceased administrator's breach of duty was filed in the estate of the said deceased administrator within one year of the death of the same pursuant to R.C. 2117.06, and further erred in the application [of] R.C.2305.12."
 {¶ 8} Reid contends that the trial court erred in concluding that because no claim had been filed with Jones' estate within one year of his death, the surcharge action could not go forward. Reid argues that R.C. 2117.06(G) provides that section 2117.06, which sets forth a one-year statute of limitations for presenting claims against a decedent's estate, does not reduce the time to bring an action against the bond of an administrator under R.C.2305.12. R.C. 2305.12 provides that an action against the bond of an administrator must "be brought within ten years after the cause thereof accrued."
 {¶ 9} In response, American presents four arguments in support of the trial court's decision. First, American argues that Reid's claim is time-barred, pursuant to R.C. 2305.12, because more than ten years have passed since the cause of action accrued. American contends that the real estate sale occurred more than eighteen years ago on July 29, 1985, and that Jones breached his fiduciary duty to file a subsequent account on April 16, 1986. Thus, American contends that any action on the bond would have had to have been filed on or before April 16, 1996. Second, American asserts that its liability is coextensive with the liability of Jones, its principal. It thus argues that if the applicable statute of limitations has run against Jones, the surety likewise cannot be subject to suit. Third, American claims that Reid's claim is barred by the doctrine of laches. Finally, American asserts that it should be discharged from liability under its bond, because it can no longer pursue its subrogation rights against Jones, due to R.C. 2117.06.
 {¶ 10} We begin with American's argument that since the one-year statute of limitations has run against Jones, it cannot be liable. "Suretyship is the contractual relation whereby one person, the surety, agrees to answer for the debt, default, or miscarriage of another, the principal, with the surety generally being primarily and jointly liable with the principal debtor. Because the surety's obligation is derived from that of the principal, the liability of the surety is ordinarily measured by the liability of the principal. As a general rule, a surety on a bond is not liable unless the principal is and, therefore, may plead any defense available to the principal with the exception of defenses which are purely personal to a principal, such as infancy, incapacity, or bankruptcy." Hopkins v. INA UnderwritersIns. Co. (1988), 44 Ohio App.3d 186, 188-89, 542 N.E.2d 679
(citations omitted).
 {¶ 11} As stated above, American argues that Reid's claims against Jones are barred by R.C. 2117.06(B), and that American may avail itself of this statute of limitations defense. R.C.2117.06(B), which concerns the presentment of creditor's claims against a decedent's estate, provides that "[a]ll claims shall be presented within one year after the death of the decedent, whether or not the estate is released from administration or an executor or administrator is appointed during that one-year period." A claim that is not presented within the one-year period is barred as to all parties. R.C. 2117.06(C). However, R.C.2117.06(G) further provides: "Nothing in this section or in section 2117.07 of the Revised Code shall be construed to reduce the time mentioned in section 2125.02, 2305.09, 2305.10, 2305.11, or 2305.12 of the Revised Code, provided that no portion of any recovery on a claim brought pursuant to any of those sections shall come from the asserts of an estate unless the claim has been presented against the estate in accordance with Chapter 2117. of the Revised Code." Under R.C. 2305.12, an action on the bond of an administrator must be brought "within ten years after the cause thereof accrued." R.C. 2109.61 states that "[a]n action may be prosecuted on the bond of a fiduciary against any one or more of the obligors thereof by any person who has been injured by reason of the breach of any condition of the bond." R.C.2307.06, which provides for a civil action on an official bond, including an administrator's bond, states that when a person renders his sureties liable on a bond, an injured person "may bring an action thereon, in his own name, against the person and his sureties to recover the amount to which he is entitled by reason of the delinquency."
 {¶ 12} We agree with Reid that, by virtue of R.C. 2117.06(G), the one-year statute of limitations set forth in R.C. 2117.06(B) is not applicable to claims brought under the administrator's bond, for which the statute of limitations in R.C. 2305.12
applies. As stated above, a cause of action on a bond may be brought against both the principal and the surety. Accordingly, reading these statutes together, Reid, as successor administrator of Bishop's estate, could bring a valid surcharge action or a claim under R.C. 2307.06 or R.C. 2109.61 against both Jones andAmerican on the administrator's bond, provided that the recovery comes from non-estate assets. Stated differently, Jones, the deceased bonded principal, could be held liable on the administrator's bond until the ten-year statute of limitations under R.C. 2305.12 had expired. See Jackson v. Conn (July 12, 1995), Clark App. No. 95-CA-11 ("[I]f Jackson had otherwise satisfied the two-year statute of limitations provided in R.C.2305.10, her claim may have survived as to non-estate assets even though it was brought more than one year after Conn's death."). Because the one-year statute of limitations does not apply to Reid's claim against Jones, Reid's claim against American likewise was not barred by the one-year limitations period set forth in R.C. 2117.06(B).
 {¶ 13} Having concluded that R.C. 2117.06(B) does not bar Reid's claim, we turn to whether his claim is time-barred by R.C.2305.12. It is undisputed that a surcharge action is governed by the ten-year statute of limitations set forth in R.C. 2305.12. American emphasizes that the real estate transaction which is the subject of Reid's surcharge action took place on July 29, 1985, more than eighteen years ago. It states that there were numerous annual accounts which Jones was statutorily required to file after this transaction occurred, the first of which was due on or before April 17, 1986.[1] American thus argues that the ten-year statute of limitations was triggered when Jones breached his statutory obligation to file this April 1986 account.
 {¶ 14} We disagree. In our judgment, although the failure to file accounts is a breach of a fiduciary and a statutory duty, which subjects the administrator to contempt and removal by the probate court, such failure is insufficient to trigger the statute of limitations on a surcharge action. See R.C. 2109.31
(indicating that when the administrator fails to file the required accounts, the probate court may issue a citation to compel the filing of the account and, if no account is subsequently filed, may remove the administrator). Consistent with this approach, in In re Testamentary Trust of Hamm (1997),124 Ohio App.3d 683, 707 N.E.2d 524, the court of appeals held that the trial court abused its discretion in ordering a surcharge against the fiduciary of a testamentary trust when the court made no findings of mismanagement and breach of the trustee's duty of care. The court noted that a motion for surcharge "has traditionally been the method employed to obtain relief from the mismanagement of trust funds * * * and the losses occasioned thereby." Id. at 690, citing In re Guardianship ofZimmerman (1943), 141 Ohio St. 207, 25 O.O. 326, 47 N.E.2d 782, paragraphs two through four of the syllabus. The court concluded that a surcharge action is not the appropriate vehicle for relief for a fiduciary's failure to file periodic accountings and that the imposition of a surcharge must be based on a finding of negligence in the administration of trust funds. Id. The court therefore held that, although the trustee had failed to file periodic accountings, the judgment imposing a surcharge on this failure was erroneous absent findings of mismanagement in the administration of the trust funds.
 {¶ 15} Ohio courts have generally held that an action accrues against the surety on a bond when "some sort of determination or adjudication of the liability of the principal has occurred."Cleveland City School Dist. Bd. of Edn. v. United Pacific Ins.Co. (June 28, 1991), Cuyahoga App. No. 60374. The liability of the deceased administrator is generally determined when the account is settled. E.g., Schraff v. Harrison (1998),94 Ohio Misc.2d 104, 703 N.E.2d 877, affirmed, (Nov. 11, 2000), Geauga App. No. 99-G-2233; Massachusetts Bonding Ins. Co. v. WintersNatl. Bank Trust Co. (C.A. 6, 1942), 130 F.2d 5. As stated inSchraff:
 {¶ 16} "The proper method of determining the liability of a fiduciary for purposes of triggering the liability of a surety on its bond is to settle the account of the fiduciary. If a fiduciary fails or refuses to file an account, it is the obligation of a successor fiduciary appointed by the court to file an account for the former fiduciary. Once the liability of the former fiduciary has been determined by the probate court, it is appropriate to commence a surcharge action against the surety on the former fiduciary's bond." Id. at 108.
 {¶ 17} In Zimmerman, a case brought by wards against the guardian of their estates, the supreme court held that "[i]t is the duty of the Probate Court to require of the guardian of the estate of a minor a full account of the guardian's care or lack of care of the assets belonging to the ward[, and] * * * to fix the liability, if any, of a guardian for his failure on final settlement to account fully for the estate of the ward." Id. at paragraph four of the syllabus. Moreover, it held that no cause of action accrues to the ward upon the guardian's bond until the probate court fixes such liability. Id. at paragraph five of the syllabus, approving and following Newton v. Hammond (1882),38 Ohio St. 430 ("A right of action on a guardian's bond to recover from the sureties the amount remaining in the hands of the guardian, first accrues to the ward when such amount is ascertained by the probate court on the settlement of the guardian's final account."), and Gorman v. Taylor,43 Ohio St. 86, 1 N.E. 227. The same general duties exist with regard to an administrator. See Zimmerman, supra (Williams, J., concurring).
 {¶ 18} In Massachusetts Bonding, supra, the Sixth Circuit likewise concluded that a claim against the surety of a deceased administrator had been timely filed. The court found that the claim was subject to the ten-year statute of limitations and that it had been timely filed, because it had been brought "some three weeks after the determination of liability by the probate court." Id. at 8.
 {¶ 19} We note that the Revised Code further provides that the death of an administrator does not affect his previously incurred liability nor that of his sureties. R.C. 2109.26. The surety of a deceased administrator may not be released from any further liability under the bond until the approval of the final accounting of the representative of the deceased fiduciary. Inre Estate of Gray (1954), 162 Ohio St. 384, 123 N.E.2d 408, paragraph four of the syllabus.
 {¶ 20} In the present case, it is undisputed that Jones failed to file any accounts subsequent to April 17, 1984, and that neither the probate court nor Bishop's intended beneficiaries sought to compel Jones to file additional accounts between 1986 and 2001. Upon Jones' death in 1996, no estate was opened and no administrator was appointed who could file the required final accounting. On October 1, 2001, the probate court found that Jones had breached his fiduciary duties and removed him, posthumously, as administrator of Bishop's estate. No final account of Bishop's estate has been filed. It was not until April 10, 2003, that Reid was appointed as Special Administrator of Jones' estate. Although an unfathomable length of time elapsed between the filing of Jones' first account and his removal as administrator, nothing in this interval triggered the statute of limitations for the filing of a surcharge action against Jones' surety, American. Accordingly, we conclude that Reid's surcharge action was filed within the statute of limitations.
 {¶ 21} American asserts that Reid's surcharge action must be precluded under the doctrine of laches. As we stated in Atwaterv. King, Greene App. No. 02CA45, 2003-Ohio-53:
 {¶ 22} "Laches is an equitable doctrine barring an action because of an unexcused delay that prejudices an adversary. The elements of laches are: (1) an unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury involved, and (4) prejudice to the other party. State ex rel.Meyers v. Columbus (1995), 71 Ohio St.3d 603, 646 N.E.2d 173. The prejudice must be material, and it may not be inferred from a mere lapse of time. Wright v. Oliver (1988), 35 Ohio St.3d 10,517 N.E.2d 883; State ex rel. Chavis v. Sycamore City SchoolDist. Bd. of Edn. (1994), 71 Ohio St.3d 26, 641 N.E.2d 188."
 {¶ 23} In support of its argument, American cites to Gilbertv. Gilbert (1896), 7 Ohio C.D. 58, 13 Ohio C.C. 29. In that case, George Gilbert was appointed as guardian of his minor son's estate on June 8, 1874, and on that same day, he sought authorization to sell real estate to which his son, William, held legal title. Four days later, the real estate was sold. By order of the court at the time the sale was ordered, George gave a bond in the amount of $12,000, with E.C. Pope as surety. George Gilbert did not file any account with the court after the sale. A year later, William became twenty-one years old. In 1876, George moved from Ohio to Illinois. On August 28, 1893 (nineteen years after the sale of the real estate), William filed a complaint in the probate court against his father, seeking an accounting. The court entered judgment against George Gilbert in the amount of $8,000 plus interest, from June 12, 1874. Thereafter, William filed suit against Pope, seeking to recover the amount covered by the bond. The court held that the probate court's judgment against George, upon which the action against Pope was based, could not be sustained. As quoted by American, the court stated, in part:
 {¶ 24} "Reason and common justice require that after this long length of time, and such laches on the part of the ward, some legal notice should be given the former guardian before an accounting could be legally made between him and his ward. It will be observed that the surety alone defends the action brought upon the bond. He seeks to defend against an action brought upon his contract, and is met with the objection that in a proceeding had in the probate court, without notice either to the former guardian or to himself, and nearly twenty years after that contract was made, an accounting was had between the guardian and the ward, conclusive against him, and against which no defense can be made. Judgment is sought on the bond against him, based solely upon that judgment of accounting made in the probate court. If for the reason now under discussion, the probate court had at any time jurisdiction to compel this accounting without notice to the former guardian, who had become a non-resident of the state, certainly it seems to us that a time must come when such jurisdiction would be lost."
 {¶ 25} Although the quoted portion mentions laches on the part of the ward, we find Gilbert to be inapposite. The issue before the court was whether the probate court continued to have personal jurisdiction over George Gilbert, such that it could enter a valid judgment against him. In essence, the court ruled that the personal jurisdiction that the probate court had over George at the time he was made guardian was lost, considering that William made no effort to compel an accounting during the year that his father remained in Ohio and that George was a nonresident for more than seventeen years prior to the lawsuit against him. Because the court lacked personal jurisdiction over George in William's suit against him (George), the judgment had no binding effect on Pope in the surety action against him (Pope). Although the court later mentions the lapse in time as potentially affecting William's ability to bring a suit in equity upon the bond, the court did not apply the doctrine of laches to case before it and, instead, reiterated that it had based its holding on the probate court's lack of personal jurisdiction over the guardian.
 {¶ 26} We find American's laches defense unpersuasive. Certainly, the blame for the unreasonably long delay in this case can fall on many shoulders. We emphasize, as have the parties, that the probate court itself had a statutory duty to require the settling of the accounts. However, once Reid was appointed as the successor administrator, he initiated the surcharge action without further delay. Moreover, we have determined that his action falls within the ten-year statute of limitations. Although American has perhaps been disadvantaged as a result of the lapse in time between Jones' actions and his removal, which then led to the surcharge action against American on the administrator's bond, that lapse cannot be attributed to Reid. Accordingly, the probate court's grant of summary judgment in American's favor cannot be sustained based on the doctrine of laches.
 {¶ 27} As a fourth reason in support of the trial court's decision, American asserts that it must be discharged from liability under its bond to the extent that its rights to subrogation have been impaired. Subrogation is an equitable doctrine under which, once the surety pays the obligation of its principal, the surety steps into the shoes of the creditor that it has paid, and the surety is entitled to enforce the creditor's rights against the principal and any other person whose actions made the surety liable to the creditor for the default. MarylandCas. Co. v. Gough (1946), 146 Ohio St. 305, 315, 65 N.E.2d 858;Am. Ins. Co. v. Bur. of Workers' Comp. (1991),62 Ohio App.3d 921, 925, 577 N.E.2d 756. In American Ins. Co., the court of appeals recognized that, when equitable, a surety may also be subrogated to the rights and remedies of its principal against third parties, where those rights arise from or are closely related to the debt that the surety was required to pay under the suretyship agreement. American Ins. Co., 62 Ohio App.3d at 925.
 {¶ 28} As argued by American, a surety may be discharged from its obligation under a suretyship arrangement when its subrogation rights have been impaired. In Mid-ContinentRefrigerator Co. v. Whitterson (1972), 32 Ohio App.2d 227,289 N.E.2d 379, a creditor obtained a judgment against the owner of a grocery store for failure to pay rent on the refrigeration equipment. The owner appealed and posted a supersedeas bond. After the judgment was affirmed on appeal, the creditor proceeded to levy execution on the grocery store, resulting in the store being padlocked. The store owner subsequently disappeared. A couple of days later, the levy was withdrawn and the padlock was removed. However, the store owner's surety was not informed. As a result, the perishable foods spoiled and the remaining equipment and inventory disappeared. The court held that the creditor could not recover fully under the bond, on the ground that he had destroyed the security provided by the principal, thus impairing the surety's subrogation rights. Thus, the surety's obligation to the creditor was discharged to the extent that the creditor had caused a decrease in the value of the security. Similarly, inReichardt v. Natl. Surety Co., Clermont App. Nos. CA2002-02-017 and CA2002-02-018, 2002-Ohio-5143, a case involving underinsured motorist coverage, the court limited the surety's obligation due to the impairment of its subrogation rights. The court held that the insured's settlement with the tortfeaser after an automobile accident impaired his insurer's rights to subrogation, thus relieving the insurance company of its obligation to provide coverage. In each of these cases, however, the impairment resulted from the actions of the principal or the creditor-obligee.
 {¶ 29} The mere impairment of the surety's subrogation rights is insufficient to relieve a surety of its obligations under a suretyship agreement. Where the impairment is not the result of an act by the creditor or principal, the surety remains obligated. See Ohio Jurisprudence 3d, Guaranty and Suretyship § 137 ("So long as the right of the surety to immediate reimbursement from the estate of the principal is unimpaired bythe act of the creditor, the obligation to pay the debt is not impaired by lapse of time until the bar of the general statute of limitations becomes a defense to the action upon the undertaking.") (emphasis added), citing Moore v. Gray (1870),26 Ohio St. 525 (surety was obligated to pay the debt of deceased principal even though a suit against the estate was barred and the creditor waited nine years after his claim against the estate was rejected).
 {¶ 30} In the present case, we find no reason why American should not be required to pay its obligation on Jones' administrator's bond, even though it may have lost its right to recoup that amount from Jones. The lapse in time cannot be attributed to Reid, nor could Bishop's estate be expected to seek compensation from American, as surety for Jones, during the time that Jones remained as administrator, even nominally. Because American's right to subrogation has not been impaired by Reid's actions, its argument is unpersuasive.
 {¶ 31} In summary, we conclude that the probate court erred in granting summary judgment to American on statute of limitations grounds and, further, that American's additional arguments in support of the probate court's judgment are unavailing.
 {¶ 32} Reid's assignment of error is sustained.
 {¶ 33} The judgment of the probate court will be reversed and remanded for further proceedings consistent with this decision.
Brogan and Grady, JJ., concur.
[1] We note that Jones was given until July 22, 1985, to file his Second and Final Account. When he failed to do so, the probate court ordered Jones to file that account by September 18, 1985. No account was filed.