OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of the Estates of James and Edna Carmean ("James," "Edna," or "the Carmeans"), filed April 9, 2007. On February 5, 2002, Dayspring of Miami Valley ("Dayspring"), a nursing home facility in Fairborn, Ohio, filed a complaint against James and Edna alleging that the Carmeans failed to pay in full for services *Page 2 
and medical care that James received while a Dayspring resident.
 {¶ 2} On December 11, 1998, Edna entered into an Admission Agreement with Dayspring that identified James, who had Alzheimer's disease, as the "resident" and Edna as the "guarantor" and "responsible party." The Admission Agreement signed by Edna provides in relevant part, "This Admission Agreement is between Dayspring Health Care Center and Rehabilitation (the `Facility') of Fairborn, Ohio, and Edna Carmean, (the `responsible party'), who is the guarantor of James Carmean (the `resident'), who agrees as follows:
 {¶ 3} * * *
 {¶ 4} "2. Facility Charges:
 {¶ 5} "(a) The resident and responsible party agree to pay solely from the residents [sic] own assets for room, three meals per day, and twenty-four hour nursing care * * * ."
 {¶ 6} From December 11, 1998 until June 1, 1999, James resided at Dayspring as a private pay resident, paying $146.00 per day. On or about June 1, 1999, James applied for Medicaid assistance, and on August 18,1999, the Clark County Department of Human Services ("Clark County") notified James that his application had been approved, and that the approval was retroactive for the months of April, May, June, July and August, 1999.
 {¶ 7} On January 31, 2000, Clark County terminated James' Medicaid benefits. The record contains a Notice, sent to James Carmean at Dayspring, from the Clark County Dept. of Human Services, dated December 28, 1999, providing, "We will stop your MEDICAID FOR THE AGED on 01/31/2000. The people affected by this action are: JAMES C. (INELIGIBLE) EDNA C. (INELIGIBLE). Reason: VALUE OF RESOURCES EXCEEDS PROGRAM ELIGIBILITY LIMITS." A notice was also sent to Edna at her home. *Page 3 
 {¶ 8} Dayspring, however, continued to bill Edna at the Medicaid-subsidized rate of $1336.00 per month for almost two years. Then, Dayspring reclassified James as a private pay patient for the period from January, 2000, through November, 2001, thereby creating a substantial arrearage of payments owed for a 22 month period. On November 28, 2001, Dayspring sent Edna a bill for $77,303.34 that stated, "Payment is due immediately," along with a notice stating that James would be discharged for nonpayment.
 {¶ 9} In December, 2001, James again applied for Medicaid benefits through Clark County, and his application was approved for a period commencing on September 1, 2001. Due to the large unpaid arrearage, Dayspring initiated discharge proceedings against James with the State of Ohio Department of Health. Following a hearing, James was transferred to another facility on February 7, 2002.
 {¶ 10} Dayspring sued on the account and asserted a claim of unjust enrichment against James and Edna, arguing that the Carmeans were in default under the terms of the Admission Agreement and owed a balance of $72,467.34. Dayspring attached a statement of James' account to their complaint itemizing the charges due. James and Edna filed an Answer and Counterclaim, asserting several affirmative defenses and 22 claims against Dayspring. Dayspring and the Carmeans moved for summary judgment, and the trial court granted summary judgment in favor of Dayspring on March 2, 2007. James died on June 5, 2002, and Edna died on August 21, 2005.
 {¶ 11} The Carmeans assert eight assignments of error. We will address their first five assignments of error together. They are as follows:
 {¶ 12} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DAYSPRING AGAINST JAMES CARMEAN WITH RESPECT TO ITS ACTION *Page 4 
ON ACCOUNT CLAIM."
 {¶ 13} And,
 {¶ 14} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DAYSPRING AGAINST EDNA CARMEAN WITH RESPECT TO ITS ACTION ON ACCOUNT CLAIM."
 {¶ 15} And,
 {¶ 16} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DAYSPRING AGAINST EDNA CARMEAN WITH RESPECT TO ITS UNJUST ENRICHMENT CLAIM."
 {¶ 17} And,
 {¶ 18} "THE LOWER COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DAYSPRING AGAINST JAMES CARMEAN WITH RESPECT TO ITS UNJUST ENRICHMENT CLAIM."
 {¶ 19} And,
 {¶ 20} "THE LOWER COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE CARMEANS WITH RESPECT TO THEIR AFFIRMATIVE DEFENSES
 {¶ 21} "(a) THE CARMEANS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE DAYSPRING'S CLAIMS ARE BARRED BY LACHES.
 {¶ 22} "(b) THE CARMEANS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE DAYSPRING'S CLAIMS ARE BARRED BY WAIVER.
 {¶ 23} "(c) THE CARMEANS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE DAYSPRING'S CLAIMS ARE BARRED BY EQUITABLE ESTOPPEL" *Page 5 
 {¶ 24} "Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. (Internal citations omitted). Our review of the trial court's decision to grant summary judgment is de novo."Cohen v. G/C Contracting Corp., Greene App. No. 2006 CA 102,2007-Ohio-4888.
 {¶ 25} We note that this court and the Twelfth District have held that a plaintiff in the summary judgment context bears the burden of showing that not only are there no genuine issues of material fact with respect to the plaintiffs own claims, but the plaintiff also bears the burden of showing that there are no genuine issues of material fact in dispute with respect to the defendant's affirmative defenses, even though the defendant bears the burden of proving his affirmative defenses at trial.ABN AMRO Mortgage Group v. Meyers (2005), 159 Ohio App.3d 608; ToddDevelopment Co. v. Morgan (Sept. 18, 2006), Warren App. No. CA2005-11-124, 2006-Ohio-4825. The Ohio Supreme Court found this holding in conflict with the opinion of the Third Appellate District inCountrymark Cooperative, Inc. v. Smith (1997), 124 Ohio App.3d 159, and certified the record in Todd Development. Oral argument was heard October 9, 2007.
 {¶ 26} In granting summary judgment in favor of Dayspring, the trial court determined, "Dayspring has provided sufficient evidence in support of its motion demonstrating the validity of its claim for a debt of $52,685.74. The Defendants have not contradicted it. Rather, the Defendants have asserted various affirmative defenses. The court finds that the defenses [of laches, equitable estoppel and waiver] are unavailing * * * ." *Page 6 
 {¶ 27} Viewing the evidence most strongly in favor of the Carmeans, we can only conclude that Dayspring provided competent summary judgment evidence of the Carmeans' debt to Dayspring, and that no genuine issues of material fact exist regarding the amount due to Dayspring pursuant to the Admission Agreement.
 {¶ 28} While the Carmeans argued that Dayspring's delay in attempting to recoup the arrearage was unreasonable, and that Dayspring misled Edna with erroneous bills for nearly two years, the trial court determined, "Those facts do not constitute circumstances for the Defendants to invoke the affirmative defenses described above. Nothing in the record shows that Dayspring knew or should have known, at any point prior to obtaining actual knowledge, that Carmean's Medicaid benefits were terminated. What is more compelling, the Carmeans, themselves, did have notice that the Medicaid benefits were terminated, but did not inform Dayspring. Instead, they appear to have taken advantage of Dayspring's inferior knowledge and paid the lower rate in the hope that it would have been overlooked. It is a longstanding principle of equity, that a party invoking a court's equitable powers must have `clean hands' — the idea that it is free of wrongdoing on its own part. Here, the Carmeans do not have clean hands for continuing to pay the subsidized rate knowing full well that they should have been paying the unsubsidized rate. Therefore, the Defendants are not entitled to relief in equity."
 {¶ 29} The affirmative defense of laches "is an equitable doctrine barring an action because of an unexcused delay that prejudices an adversary. The elements of laches are: (1) an unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury involved, and (4) prejudice to the other party. (Internal citation omitted). The prejudice must be material, and it may not be inferred from a *Page 7 
mere lapse of time." In re Bishop, Montgomery App. No. 20102,2004-Ohio-2197; see Murry v. Watkins, Stark App. Nos. 2004CA00139, 2004CA00136 ("The defense of laches is based on the proposition that equity will not aid those who `slumber on their rights,' or who unreasonably delay the assertion of a right.")
 {¶ 30} "Equitable estoppel is established where there is a misleading factual misrepresentation made that induces reasonable reliance and causes detriment to the relying party." Greenbrier III CondominiumOwner's Association v. Ebner, Clark App. No. 2003-CA-59, 2004-Ohio-1019.
 {¶ 31} As noted above, there is no genuine issue of material fact regarding the amount the Carmeans owed to Dayspring, and the record before us reveals no prejudice or detriment to the Carmeans that would entitle them to relief in equity. They were simply asked to pay what they owed to Dayspring.
 {¶ 32} The trial court summarily rejected the affirmative defense of waiver without specific analysis, noting, "Waiver functions as an affirmative defense when the plaintiff actually or constructively relinquished the right it presently seeks to assert." In discussing the defense of waiver, we have previously noted, ?`Ignorance of a material fact negatives waiver, and waiver cannot be established by a consent given under a mistake or misapprehension of fact. Waiver presupposes a full knowledge of an existing right or privilege and something done designedly or knowing to relinquish it.'
 {¶ 33} * * *
 {¶ 34} "Waiver is mainly, or essentially, a matter of intention, Thus, a prerequisite ingredient of the waiver of a right or privilege consists of an intention to relinquish it. Indeed, *Page 8 
the essence of a waiver, as indicated by the definition, is the voluntary and intentional relinquishment of a known right, claim, or privilege. Whether an alleged waiver is express or implied, it must be intentional. Mere negligence, oversight, or thoughtlessness does not create a waiver." Russell v. City of Dayton (May 18, 1984), Montgomery App. No. 8520.
 {¶ 35} The Carmeans argue, "Dayspring sent Mrs. Carmean a reduced bill for approximately two years despite its constructive knowledge that Mr. Carmean no longer received Medicaid benefits. Dayspring's conduct implies a relinquishment of Dayspring's right to bill Mr. Carmean as a private pay patient." Dayspring argues in response that "Dayspring never intended to relinquish any right as against Defendants. Indeed, as soon as Dayspring recognized its administrative oversight, it promptly issued a bill for the correct amount due." Nancy Burden's affidavit provides that "Dayspring had nothing to gain by underbilling a resident, * * * Dayspring never intended to relinquish any of its rights to collect this debt as against" James and Edna.
 {¶ 36} We conclude that Dayspring has established the absence of a genuine issue of material fact as to the Carmeans' waiver defense. As soon as it became aware of the error in billing, Dayspring issued a bill for the full amount due to Edna and initiated discharge proceedings against James. Such conduct is inconsistent with the full knowledge of an existing right and the voluntary and intentional relinquishment of that right that the defense of waiver requires, but is rather consistent with negligence, oversight or thoughtlessness.
 {¶ 37} We note that the Carmeans also asserted the defenses of failure to state a claim, accord and satisfaction and unconscionablity. The trial court did not address the defenses of failure to state a claim and accord and satisfaction, and the Carmeans do not assign error to the trial court's failure to do so. Regarding the defense of unconscionability, the trial court *Page 9 
determined that the Carmeans "rely on the Ohio Consumer Sales Practices Act. While nursing home facilities are amenable to claims under the CSPA, the CSPA does not provide affirmative defenses. * * * Therefore, this defense is also unavailing." For Civ.R. 8(C) purposes, however, the affirmative defense of unconscionability is unrelated to the CSPA, and the trial court erred in rejecting this defense pursuant to the CSPA. "Unconscionability is generally recognized as the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party."W.K. v. Farrell, Montgomery App. No. 21105, 2006-Ohio-2676. We note, however, that the Carmeans did not assign error to the trial court's ruling on unconscionability.
 {¶ 38} For the foregoing reasons, the Carmeans' first five assignments of error are overruled.
 {¶ 39} The Carmeans' sixth assignment of error is as follows:
 {¶ 40} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DAYSPRING ON THE CARMEANS' NINETEENTH COUNTERCLAIM
 {¶ 41} "(a) DAYSPRING SENT MISLEADING BILLS.
 {¶ 42} "(b) DAYSPRING ILLEGALLY REQUIRED MRS. CARMEAN TO SIGN AS MR. CARMEAN'S `GUARANTOR.'
 {¶ 43} "(c) DAYSPRING KNEW PAYMENT WAS NOT POSSIBLE"
 {¶ 44} The Carmeans' nineteenth counterclaim alleged that Dayspring's actions were "unconscionable and in violation of the Ohio Consume[r] Sales Practices Act, O.RC. §§ 1345 et seq." The trial court determined that the Carmeans' nineteenth counterclaim "fails as a matter of law. * * *." We agree. Dayspring's correction of a billing oversight in order to charge the *Page 10 
Carmeans the amount legitimately owed for the care and services that James received is not unconscionable.
 {¶ 45} The Carmeans' argument that Dayspring illegally required Edna to sign as James' guarantor lacks merit; a facility "may require an individual who has legal access to a resident's income or resources available to pay for facility care to sign a contract, without incurring personal financial liability, to provide facility payment from the resident's income or resources." 42 C.F.R. § 483.12.
 {¶ 46} Finally, there is nothing in the record to support the Carmeans' argument that Dayspring knew the Carmeans could not pay their bill and accordingly violated R.C. 1345.03(B)(4), which provides: "In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration: * * *
 {¶ 47} (4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer." James was initially a private pay patient, until his application was approved, and the fact that James' benefits were later terminated indicates that he had assets from which Edna could pay his bill. Were that not the case, he would have remained Medicaid eligible. Finally, Nancy Schaffer, James' daughter, testified that James and Edna received a check for $98,030.32, as of March 29, 2002, and that Edna opened a new bank account with the money.
 {¶ 48} Since Dayspring's actions were not unconscionable, Dayspring's sixth assignment of error is overruled.
 {¶ 49} The Carmeans' seventh assignment of error is as follows:
 {¶ 50} "THE GREENE COUNTY PROBATE COURT'S HOLDING THAT THE *Page 11 
CARMEANS' ESTATES COULD NOT PAY THEIR DEBTS TO DAYSPRING IS RES JUDICATA AND THE TRIAL COURT'S DENIAL OF THE CARMEANS' MOTION FOR PROTECTIVE ORDER WAS IN ERROR"
 {¶ 51} On August 27, 2007, we stayed post-judgment discovery pending this appeal, and the Carmeans' seventh assignment of error is accordingly moot, and it is overruled.
 {¶ 52} The Carmeans' eighth assignment of error is as follows:
 {¶ 53} "THE TRIAL COURT ERRED BY CONSIDERING NEW ARGUMENTS RAISED FOR THE FIRST TIME IN DAYSPRING'S RESPONSE."
 {¶ 54} On March 30, 2005, Dayspring filed a motion for leave to file a reply to the Carmeans' memorandum in opposition to Dayspring's motion for summary judgment, and the trial court did not rule on Dayspring's motion. Dayspring filed a reply on April 22, 2005.
 {¶ 55} The Carmeans argue that the "trial court erred by considering new arguments contained in Dayspring's belated and unauthorized response." Dayspring argues that "a trial court may consider a motion that has been filed without express leave of court."
 {¶ 56} We conclude that, by considering Dayspring's reply, the trial court implicitly sustained Dayspring's motion for leave to file an untimely reply. In Brandberry v. Owens (Aug. 16, 1989), Clark App. No. 2542, we determined that "a trial court may, in the exercise of its sound discretion, consider a motion for summary judgment filed without express leave of court and after the action has been set for pre-trial or trial. (Internal citation omitted). A trial court implicitly grants leave to file by granting the summary judgment motion (Internal citation omitted). A party complaining that the trial court abused its discretion must show that the court's order was unreasonable, arbitrary, or capricious." We see no abuse of discretion, and the *Page 12 
Carmeans' eighth assignment of error is overruled.
 {¶ 57} The judgment of the trial court is affirmed.
 WOLFF, P.J. and BROGAN, J., concur. *Page 1