UNITED STATES of America,
Plaintiff–Appellant,

v.

SAFECO INSURANCE COMPANY OF
AMERICA, INC. and John Van den
Bosch, Jr., Defendants–Appellees.

No. 88–5203.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1989.

Decided March 16, 1989.

Robert M. Williams, Jr., Asst. U.S. Atty., Memphis, Tenn., Gary R. Allen, Acting Chief, Wynette J. Hewett, William S. Rose, Jr., U.S. Dept. of Justice, Tax Div. Appellate Section, Paul M. Predmore, Trial Atty., Office of U.S. Dept. of Justice, Tax Div., Washington, D.C., Thomas R. Lamons (argued), for U.S.

J. Michael Franks, Nashville, Tenn., John Van den Bosch, Jr., Jackson, Tenn., Mark J. Patterson (argued), Nashville, Tenn., for Safeco Ins. Co. of America.

J. Michael Franks, Mark J. Patterson, Nashville, Tenn., William M. Walsh, Hanover, Walsh, Jalenak & Blair, Memphis, Tenn., for John Van den Bosch, Jr.

John Van den Bosch, Jr., Jackson, Tenn., pro se.

Before KENNEDY and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

KENNEDY, Circuit Judge.

The United States of America appeals from the District Court's judgment holding that under 26 U.S.C. § 6321, John Van den Bosch, Jr. (taxpayer) did not possess sufficient interest in a fund created through fees earned by him as a standing Chapter 13 bankruptcy trustee to constitute "property" or "rights to property" to which a federal tax lien for his income tax liabilities could attach. The government argues that the District Court erred in finding the taxpayer had no "right to property" in the fund because the taxpayer had at a minimum a claim against the fund for compensation arising out of his performance of services as a standing trustee cognizable as a "right to property" subject to the government's tax lien. Because we believe the taxpayer possessed a property interest in the fund, we reverse the judgment of the District Court.

Taxpayer served as the standing Chapter 13 bankruptcy trustee for the Eastern Division of the Western District of Tennessee from approximately 1960 until his removal for cause on May 31, 1985. Defendant-appellee, Safeco Insurance Company of America, is the issuer of a one million dollar trustee's blanket bond in favor of the United States securing taxpayer's performance of his obligations and duties as a Chapter 13 bankruptcy trustee.

In July of 1983, certain irregularities were discovered concerning taxpayer's accounting regarding amounts collected and paid for taxpayer's compensation and expenses.[1] The Bankruptcy Court for the Western District of Tennessee disqualified taxpayer from serving as trustee in future Chapter 13 cases but allowed him to contin-

ue administering existing plans under his direction. On July 15, 1983, the Bankruptcy Court entered an order barring taxpayer from "disburs[ing] any funds to himself or his staff for salary or expense without a separate written application (motion) and signed Order itemizing in detail such expenditure."

From July 15, 1983, until taxpayer was removed from office on April 5, 1985, monthly checks were issued, payable to taxpayer, representing approximately five percent of the receipts under plans administered by him. The checks were held by the Clerk of the Bankruptcy Court who thereafter authorized monthly disbursements for taxpayer's expenses and staff salaries. The clerk, however, authorized no disbursements of salary to taxpayer himself because the Bankruptcy Court had "expressly reserved" the matter of taxpayer's salary pending further order of the court. The case was thereafter removed to the District Court and the Bankruptcy Court withheld action upon the amount of the taxpayer's compensation.

The Bankruptcy Court's April 5, 1985 order of removal required taxpayer to return to the government any amounts of accrued compensation withheld by the clerk of the court in excess of the GS–16, step 1 salary limit and provided for setoff in favor of the United States against the government's cost of removal and prior excess compensation and expense reimbursement. As of June 5, 1985, the fund retained by the clerk contained approximately $197,414.87 of which $116,761.10 represented the amount taxpayer would have earned but for the July 15, 1983 order withholding his compensation.[2]

After taxpayer's removal as standing trustee but prior to any determination of the amount of the overpayments, the United States filed the instant action for dam-

---

1. The Bankruptcy provisions then in effect required a Chapter 13 standing trustee to collect from all payments made to debtors under the plans administered by him, an amount determined under 11 U.S.C. § 1302(e)(1). Section 1302(e)(1) (since repealed) set the maximum compensation for a standing trustee at the lesser of five percent of the amounts paid by debtors under plans he administered or the annual salary at the GS–16, step 1 level.

2. The amount of money contained in the fund in excess of taxpayer's proper salary ($80,653.77) was immediately paid over to the United States as an excessive amount retained by the taxpayer.

ages against taxpayer individually, and against Safeco on the blanket bond securing taxpayer's performance as trustee. Subsequently, the parties entered a settlement stating that taxpayer was liable for $298,550.00 in overpayments and other damages resulting from taxpayer's misconduct.

The parties, however, disagreed concerning the proper disbursement of that portion of the fund representing the salary that would have been earned by taxpayer between July 15, 1983 (the date of the order precluding salary disbursements) and June 5, 1985 (the date of the taxpayer's removal). The government argued that this portion of the fund was salary earned by taxpayer and therefore subject to preexisting federal tax liens for taxpayer's delinquent 1982 and 1983 income tax liabilities which were senior to the government's claim against the fund as a judgment creditor.[3] Accordingly, Safeco would be required to pay the entire $298,550.00 overpayment amount under its blanket bond to the United States because the amount remaining in the fund representing taxpayer's withheld salary would be applied to satisfy taxpayer's income tax liabilities. Safeco, on the other hand, claimed the balance remaining in the fund was not subject to the government's tax liens because the July 15, 1983 order halting taxpayer's salary disbursements prevented the characterization of the fund's contents as "property" of taxpayer under 26 U.S.C. § 6321. Accordingly, Safeco sought application of the remaining amounts in the fund against taxpayer's liability for damages resulting from his excessive compensation thus reducing Safeco's liability on the blanket bond.

The District Court accepted Safeco's argument and granted Safeco's motion for summary judgment, holding that taxpayer lacked any property interest in the fund held by the Bankruptcy Court to which a federal tax lien could attach. The court's order directed that the $116,761.10 be applied to reduce taxpayer's liability for dam-

ages as a result of his misconduct as a trustee rather than his tax liabilities. The United States appeals from this judgment of the District Court.

Under the Internal Revenue Code of 1954, a lien arises when a taxpayer fails or refuses to pay his taxes after assessment, notice and demand. *See* I.R.C. §§ 6321 & 6322 (1982). This lien arises upon assessment and attaches to "all property and rights to property, whether real or personal, belonging to [the taxpayer]" including property which the taxpayer subsequently acquires. *Id.* at § 6321. *See Glass City Bank v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). The Code's broad language "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

■ The issue presented in this case is whether the taxpayer had a property right to which the tax lien could attach. As with all federal revenue acts, state law defines " 'the nature of the legal interest which the taxpayer had in the property.' " *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960) (quoting *Morgan v. Commissioner*, 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940)). As the Supreme Court has succinctly stated, however, "[t]he question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law." *National Bank of Commerce*, 472 U.S. at 727, 105 S.Ct. at 2928 (citing *United States v. Bess*, 357 U.S. 51, 56–57, 78 S.Ct. 1054, 1057–58, 2 L.Ed.2d 1135 (1958)). Consequently, state-law limitations upon the ability of general creditors to reach a taxpayer's property do not affect the attachment of federal tax liens because the state-law consequences flowing from a property interest properly defined under state law "are of no concern to the operation of the federal tax law." *Na-*

---

**3.** The government assessed federal income taxes for tax years 1982 and 1983 against taxpayer on November 14, 1983 and November 26, 1984, respectively. Notices of the tax liens for those years were filed on June 29, 1984 and May 21, 1985, respectively. Safeco has claimed no interest against the fund with priority over the tax liens.

*tional Bank of Commerce,* 472 U.S. at 723, 105 S.Ct. at 2926.

Under federal tax law, the government's tax liens attach to every interest in property a taxpayer might have. A federal tax lien attaches to a taxpayer's interest in property regardless of whether that interest is less than full ownership or is only one among several claims of ownership. *See National Bank of Commerce,* 472 U.S. at 725, 730, 105 S.Ct. at 2927, 2929. Unresolved questions concerning the ultimate ownership of the property will not prevent provisional attachment of a federal tax lien. *Id.* at 724–25, 105 S.Ct. at 2926. The fact that a taxpayer's "rights to property" may be restricted or his enjoyment postponed does not prevent attachment. *See, e.g., United States v. Bank of Celina,* 721 F.2d 163, 167 (6th Cir.1983) (tax lien attaches to accounts receivable); *Little v. United States,* 704 F.2d 1100, 1105–06 (9th Cir.1983) (tax lien attaches to taxpayer's right of redemption); *J.A. Wynne Co. v. R.D. Phillips Const. Co.,* 641 F.2d 205, 208–09 (5th Cir.1981) (lien attaches to a contractual right to receive progress payments). Furthermore, "it is quite clear, generally, that accrued salaries are property and rights to property subject to levy." *Sims v. United States,* 359 U.S. 108, 110–11, 79 S.Ct. 641, 644, 3 L.Ed.2d 667 (1959) (citing *Glass City Bank,* 326 U.S. at 268, 66 S.Ct. at 110).

Whether the taxpayer here, as a standing trustee in bankruptcy, had a right to property in the fund is a factual question which turns upon the circumstances of the particular case. *Flores v. United States,* 551 F.2d 1169, 1172 (9th Cir.1977). The District Court correctly noted that if taxpayer has any interest in the fund, under federal law that interest is subject to the tax liens to the extent that state law recognizes such interests as property. The District Court went on to analyze taxpayer's claim to the fund under the trustee salary provisions of 11 U.S.C. § 1302(e). The District Court found that taxpayer could have no property interest in the fund following the Bankruptcy Court's order of July 15, 1983, until a further order of the court directed the disbursement of funds to taxpayer. We disagree.

Taxpayer in this case clearly had an interest in the fund sufficient to constitute a right to property under section 6321. First, the July 15, 1983 order was, by its own terms, simply a restriction upon taxpayer's ability to disburse funds to himself without court approval. The Bankruptcy Court's July 15 order directed taxpayer to begin an outside audit and disclose his expenses for the years in question, and prohibited him from disbursing funds without presenting an itemized application to the court. The Bankruptcy Court intended to defer taxpayer's receipt of compensation by holding it pending a full accounting. The Bankruptcy Court certainly didn't intend taxpayer to remain wholly uncompensated for the services he performed during the pendency of the removal proceedings. Although, as the District Court noted, the Bankruptcy Court never ordered any sums disbursed to taxpayer, this fact is immaterial because a federal tax lien may attach no matter how limited the taxpayer's interest in the property. *See National Bank of Commerce,* 472 U.S. at 719–25, 105 S.Ct. at 2923–27. The District Court erred in relying upon the Bankruptcy Court's failure to order disbursement because the tax liens had already attached to the taxpayer's interest in the fund despite the limitations placed upon that interest. Also, if the fund had not been distributed to taxpayer to the extent he was entitled to it, he could have sued for it.

Second, as pointed out by the United States in its brief, the chronology of events in this case belies Safeco's theory—that taxpayer had no property interest in the fund because he was working without pay after the July 15 order as a result of his earlier overcompensation. The July 15 order cannot be reasonably construed as requiring taxpayer to work without pay to compensate for his previous receipt of excessive salary since the court did not determine that taxpayer had in fact overcompensated himself until the conclusion of the removal proceedings in 1985. Thus, at the time the Bankruptcy Court began to with-

hold taxpayer's salary, it was unaware to what extent plaintiff had earlier received overcompensation.

Lastly, the District Court, by holding that the fund should be applied toward taxpayer's damages liability, implicitly recognized taxpayer's interest in the fund. The court could have no basis other than taxpayer's interest in the fund for an award of those moneys to reduce taxpayer's damages liability. Contrary to Safeco's assertions, the government cannot nullify taxpayer's property interest in the fund *ab initio* under section 1302(e)(2) as excess compensation because any excess allocable to the period from July 15, 1983 through June 4, 1985, was paid to the government. Taxpayer's liability for overcompensation *prior* to July 15, 1983, is a separate matter altogether. The government's claim against taxpayer for that amount does not divest him of his property interest in his post-July 15 salary. Taxpayer's liability for pre–1983 overcompensation damages simply does not cancel his rights in his later lawful compensation. Thus, given taxpayer's interest in the fund, the question here is simply which of the government's two claims against taxpayer should be satisfied first from that interest. The government's claim as tax lienor clearly has priority.[4]

■ Safeco makes two final arguments both of which must fail. First, Safeco argues that the IRS lien could not attach to the fund because the fund is being held by the court and under Tennessee law judgment creditors can't attach funds held *in custodia legis. See, e.g., Martin v. Wood,* 212 Tenn. 389, 370 S.W.2d 478 (1963). Tennessee law defining creditors' rights, however, is inapposite; federal rather than state law determines whether a federal tax lien attaches. *National Bank of Commerce,* 472 U.S. at 727, 105 S.Ct. at 2928. Second, Safeco asserts that taxpayer had no property rights in the fund because the fund was the property of the United States under the equitable theory of a constructive trust. We do not believe equity would be served by the imposition of a constructive trust. Rather than seeking to avoid double liability through the use of a constructive trust, Safeco seeks to reduce its liability for pre–1983 misconduct under the blanket bond by an amount totally unrelated to Safeco's obligation. The government demands Safeco's performance of Safeco's obligation under the bond unreduced by an amount to which Safeco has no claim by reason of the tax lien priority. Furthermore, before a court will impose a constructive trust upon property, the property must be traceable to funds misappropriated by the wrongdoer. *See, e.g., McConnell v. Henochsberg,* 11 Tenn.App. 176 (1929). The fund in dispute here bears no relationship to the excessive salary taxpayer paid himself. The fund represents salary accrued during the course of the removal proceedings while the wrongdoing concerns taxpayer's earlier receipt of excessive salary. The earlier excessive disbursements cannot be traced to the fund. Thus, imposition of a constructive trust would be inappropriate.

For the foregoing reasons, the judgment of the District Court is REVERSED and the cause is REMANDED for further proceedings consistent with this opinion.

---

**4.** We note that even if taxpayer had only a claim for his compensation after the July 15 order, this claim would still constitute a property interest to which the tax lien could attach. *See Sims,* 359 U.S. at 110, 79 S.Ct. at 644. The District Court's reliance upon *Wagner v. United States,* 573 F.2d 447 (7th Cir.1978) is misplaced. *Wagner* concerned a taxpayer's property interest in future *unearned* wages while the present action concerns the taxpayer's present *accrued* interest in unpaid compensation.