**WAYNE COUNTY BOARD OF COUNTY COMMISSIONERS, Plaintiff,**

v.

**MENDEL, INC., et al., Defendants,**

**INTERNAL REVENUE SERVICE, Defendant–Appellee,**

**Ohio Farmers Insurance Company, Defendant–Appellant.**

No. 00–3809.

United States Court of Appeals, Sixth Circuit.

Oct. 29, 2001.

Before RYAN and COLE, Circuit Judges, and WILLIAMS, District Judge.*

---

* The Honorable Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

RYAN, Circuit Judge.

In this interpleader action, the defendants, the Internal Revenue Service and Ohio Farmers Insurance Company, claim the right to funds retained by the Wayne County (Ohio) Board of County Commissioners in connection with their contract with Mendel, Inc.

Ohio Farmers appeals from the district court's determination that the government held a superior tax lien thereby entitling the government to the fund. It contends that the district court erred in awarding the retained funds to the government because debtor-taxpayer, Mendel, did not have a right to the retained funds to which a valid tax lien could attach. We believe that Mendel completed the work as required by the contract, thus entitling it to a right in the retained funds. Furthermore, because Ohio Farmers did not comply with the superpriority provisions of 26 U.S.C. § 6323(c) (1988), we will AFFIRM the decision of the district court.

## I.

Because the parties are well aware of the largely undisputed facts in this action, we offer only an abbreviated factual summary. Debtor-taxpayer Mendel entered into a contract with Wayne County to improve a bridge located within the county. Mendel secured a surety bond from Ohio Farmers under which Ohio Farmers guaranteed: (1) performance on the contract, and (2) payment to all persons supplying labor and materials to the project. Mendel failed to pay two of its subcontractors, United Precast and Meredith Brothers. Pursuant to the payment bond, Ohio Farmers paid United Precast and Meredith Brothers $7,677 and $8,258.77, respectively. Ohio Farmers did not have to fulfill any obligations with respect to its performance bond.

During the contract period, Mendel similarly failed to pay all of its employees' share of federal income tax and social security withholding on wages. The government assessed these tax liabilities on June 16, 1997, August 25, 1997, September 22, 1997, December 8, 1997, and April 1, 1998. These assessed tax liabilities amounted to more than $100,000.

During construction of the bridge, Wayne County made periodic payments to Mendel pursuant to the parties' contract. The contract allowed for Wayne County to withhold a certain percentage of each estimate payment until final completion and acceptance of all work. When the work was finished, Wayne County had in its possession $10,261.51 of undistributed contract funds. The County received a notice of levy from the IRS on Mendel's property in the amount of $101,304.56. Approximately three months later, Wayne County received a letter from Ohio Farmers directing the County to mail all remittances and checks due Mendel to Ohio Farmers as surety for Mendel. Wayne County then filed this interpleader action, asking the district court to determine the rightful owner of the retained funds.

## II.

### A.

"This court reviews de novo a district court's grant of summary judgment." *Blachy v. Butcher*, 221 F.3d 896, 903 (6th Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1653, 149 L.Ed.2d 636 (2001).

### B.

We agree with the district court's determination that the government had a valid tax lien on the retained funds and that that lien was superior to any interest Ohio Farmers might claim.

Ohio Farmers first contends that the district court erred in granting summary judgment to the government because Mendel had no interest in the retained funds to which a tax lien could properly attach. We must start, therefore, by determining whether Mendel had a valid interest in the retained funds. State law determines what rights an individual possesses in property, but federal law dictates whether those rights are "property" or "rights to property" under 26 U.S.C. § 6321. *United States v. Safeco Ins. Co. of Am., Inc.*, 870 F.2d 338, 340 (6th Cir. 1989). This court in *Safeco* made clear that a tax lien can attach to "a taxpayer's interest in property regardless of whether that interest is less than full ownership or is only one among several claims of ownership." *Id.* at 341. It is undisputed that Mendel completed its work on the bridge project. Wayne County never declared Mendel to be in breach of the contract, nor did it claim any right to the retained funds. Although the Mendel–Wayne County contract required that Mendel "furnish satisfactory evidence that all obligations ... have been paid, discharged, or waived," we are convinced that Mendel's physical completion of the bridge evidences an entitlement to receive the retained funds under the contract. *See In re Constr. Alternatives, Inc.*, 2 F.3d 670, 674 (6th Cir.1993).

Because Mendel held a valid property interest in the retained funds, the government could properly attach a tax lien to same. The government has a lien for unpaid taxes on "all property and rights to property" of a taxpayer who fails to pay his taxes after a demand has been made. 26 U.S.C. § 6321. Tax liens arise on the date of assessment and continue until the assessment is fully satisfied or becomes unenforceable. 26 U.S.C. § 6322. Tax liens attach to all property rights the taxpayer then holds or subsequently acquires, and continue until the underlying tax liability is satisfied or becomes unenforceable. *Safeco Ins. Co.*, 870 F.2d at 340. Because Mendel had a property interest in the retained funds, and because they were assessed before completion of the bridge project, the government may properly assess a lien for unpaid taxes on that property interest.

Where there are competing federal and state liens, the common law principle of first in time, first in right controls. *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1176 (6th Cir.1990) (citing *United States v. City of New Britain, Conn.*, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). If the competing state law lien falls into one of the limited categories of liens enumerated in 26 U.S.C. § 6323(a), the federal tax lien is perfected only upon notice that the federal tax lien has been filed. *United States, ex rel. IRS v. McDermott*, 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). If the state law lien does not fall into one of the categories enumerated in § 6323(a), then the federal tax lien is perfected upon assessment. *Terwilliger's*, 911 F.2d at 1176. Under § 6323(a), a tax lien is not effective against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice [of the lien] ... has been filed by the Secretary." 26 U.S.C. § 6323(a). We agree with the district court that nothing in the record indicates that Ohio Farmers is subrogated to any such rights. Therefore, the tax lien has priority over the equitable state lien as long as it was assessed prior to the equitable lien becoming choate.

A state-created interest becomes choate "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Terwilliger's*, 911 F.2d at 1176 (citation omitted). Therefore, any interest Ohio Farm-

ers had in the retained funds became choate on December 1, 1997, with respect to the United Precast claim, and on February 11, 1998, with respect to the Meredith Brothers claim. The record is clear, however, that the government had by December 1, 1997, assessed a $58,789.52 tax lien against Mendel, an amount well in excess of the total of the retained funds. Because the tax lien preceded any claim Ohio Farmers may have had became choate, we agree that the district court was correct in finding that the government's lien took priority. Ohio Farmers' contention that an unperfected claim or lien, upon becoming perfected, "relates back" in a way that permits it to prime an antecedent tax lien is simply not supported by the precedent established by this court. *E.g., Blachy,* 221 F.3d at 905; *see also United States v. Dishman Indep. Oil, Inc.,* 46 F.3d 523, 527 (6th Cir.1995).

■ Ohio Farmers contends finally, that under the federal tax lien statute, a surety's security interest is given priority over a tax lien, even if it is not "perfected" at the time of the tax lien filing. 26 U.S.C. § 6323(c). Under § 6323(c)(1), a surety's security interest has priority over a tax lien even though the security interest came into existence after the tax lien was assessed if: "1) the surety's 'security interest' ... is an obligatory disbursement agreement such as a suretyship agreement; 2) ... the surety's interest is in 'qualified property' covered by the terms of a written agreement entered into before the tax lien filing; and 3) the 'security interest' would be protected under local law against a judgment lien that arose at the same time as the tax lien." *Constr. Alternatives,* 2 F.3d at 677–78 (footnotes omitted). Under Ohio law, a surety must perfect his security interest by filing a financial statement in the appropriate office. *Id.* at 678 (citing Ohio Rev.Code

§§ 1309.21, 1309.23 (Anderson Supp.1992)). Because Ohio Farmers never filed a financial statement as required by Ohio law, they are not able to take advantage of the superpriority provisions of § 6323(c). *See id.* Therefore, the district court did not err in holding that the government had a valid tax lien on the retained funds that was superior to any interest Ohio Farmers may claim.

### III.

For the foregoing reasons, the decision of the district court is AFFIRMED.